A03A1611. THE STATE v. HENDERSON.
(589 SE2d 647)

MIKELL, Judge.

The state appeals the trial court's suppression of evidence discovered during a lawful pat-down search of defendant Brian Henderson. For the reasons that follow, we affirm.

The evidence presented at the hearing on the motion to suppress showed that at 11:30 p.m. on April 28, 2002, Columbus police officers

David Horiuchi,[1] Michael Danke, and Vernon Harris were on patrol in a known drug and prostitution area. The officers observed Henderson, another man, and a well-known prostitute standing together in the parking lot of an apartment complex. The apartment complex was a known drug and prostitution area, and one of the apartments housed six to eight prostitutes.

When the officers drove into the parking lot to investigate, the three individuals split up. Henderson got into his vehicle. The prostitute remained standing in front of Henderson's vehicle while the other man walked off. The officers did not activate their lights and/or siren or block Henderson's vehicle. The officers got out of their cars and walked toward Henderson's vehicle. Henderson was sitting in his vehicle with the engine off. Officers Harris and Horiuchi approached Henderson's vehicle on the driver's side, while Officer Danke approached on the passenger side. Officer Harris observed a "fairly large size knife" on the console at Henderson's right hand, which Officer Danke testified easily could have been reached by Henderson and which Officer Harris believed constituted a danger to himself and the other officers. Henderson was asked to step out of the vehicle. Officer Harris then asked Officer Horiuchi to conduct a pat-down for weapons. While patting down the exterior of Henderson's clothing, Officer Horiuchi felt a lump in the coin pocket of Henderson's jeans.[2] Officer Horiuchi testified, "[w]hen I got to the coin pocket of his pants, while patting him down I felt a lump in the coin pocket, which in my experience I believed to be contraband inside of that coin pocket." Officer Horiuchi testified that when he felt the bag, he had no doubt it was contraband. Even though the officer initially believed the substance was powdered cocaine, Henderson admitted it was methamphetamine. Henderson was arrested. Incident to his arrest, officers searched his vehicle, finding an additional 12 grams of methamphetamine and scales. Officers seized a total of 14.28 grams of methamphetamine from Henderson.

Henderson was charged with possession of methamphetamine with intent to distribute. His vehicle was seized, and the state initiated forfeiture proceedings. Henderson filed virtually identical motions to suppress in this action and the civil forfeiture action.[3] On July 26, 2002, a hearing was held on the motion to suppress in the

---

[1] Officer Horiuchi has been with the Columbus Police Department for seven and a half years and has worked in the drug and alcohol unit for the past two and a half years. Officer Horiuchi has attended 40 hour courses in drug recognition and drug identification and has arrested numerous individuals for drug violations.

[2] Officer Horiuchi testified that the "coin pocket specifically is a well known place for people to try to hide drugs."

[3] Henderson stipulated that the substance found in his possession was in fact contraband.

civil forfeiture action. The hearing was continued and reconvened on July 29, 2002.

On January 10, 2003, a hearing was held on the motion to suppress in this action. During that hearing, counsel for both the state and Henderson presented their arguments. The trial court did not hear evidence, but used the transcript of evidence from the civil forfeiture action to conclude that the plastic bag of methamphetamine discovered by officers in the coin pocket of Henderson's jeans was seized improperly under the "plain feel" doctrine. In its order, the trial court found that "the baggie in [Henderson's] pocket was not distinguishable or recognizable as contraband." Further,

> [O]fficer [Horiuchi] articulated no distinguishing characteristics that would reasonably lead [him] to believe that the object was contraband rather than a legal substance until the baggie was removed from the pocket. A small baggie of powder could have been many things other than methamphetamine such as a packet of sweetener or headache powder.

See *State v. Cooper*, 830 S2d 440, 447 (La. App. 2002) (reversing denial of motion to suppress because "[t]he officer could not articulate any physical attributes of the item which provided him with either reasonable suspicion that the object was a weapon or probable cause that the item was contraband") (bold omitted). Resolution of the civil forfeiture action is awaiting the outcome of this appeal.

The state argues that the trial court should have denied Henderson's motion because Officer Horiuchi discovered the bag of methamphetamine during a lawful *Terry* frisk and testified that he immediately recognized the bag as contraband based on his training and experience in the area of narcotics.

When reviewing the grant or denial of a motion to suppress, we apply the clearly erroneous standard. "Unless clearly erroneous, the trial court's ruling[ ] on disputed facts and credibility at a suppression hearing must be accepted. . . ." (Citation and punctuation omitted.) *State v. Williams*, 212 Ga. App. 164, 165 (1) (441 SE2d 501) (1994). "The credibility of the witnesses and the weight to be accorded their testimony rest with the trier of fact, who is under no obligation to believe a witness, even in the absence of contradictory testimony." *State v. Williams*, 193 Ga. App. 462 (388 SE2d 55) (1989).

The purpose of a *Terry* pat-down is to determine whether a person is carrying a weapon and not to discover evidence of a crime. See *Terry v. Ohio*, 392 U. S. 1, 23-24 (88 SC 1868, 20 LE2d 889) (1968). In *Minnesota v. Dickerson*, 508 U. S. 366 (113 SC 2130, 124 LE2d 334) (1993), the Supreme Court clarified the extent of police authority to

seize items felt during a *Terry* pat-down search and extended *Terry*'s exception to Fourth Amendment warrant requirements by recognizing the "plain feel" doctrine.[4] Id. at 374-375.

> Under [the plain feel doctrine], if, during a lawful pat-down search, an officer feels an object whose contours or mass makes it immediately identifiable as contraband, that officer can seize the item. Thus, for evidence to be admissible under the plain feel doctrine, the searching officer must express a degree of certainty in identifying the item. This is so because a pat-down search "is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial."

(Footnotes and emphasis omitted.) *Patman v. State*, 244 Ga. App. 833, 834-835 (537 SE2d 118) (2000). See also *Dickerson*, supra.

Here, the record is devoid of any testimony or evidence from Officer Horiuchi showing that the object he might have felt was, by virtue of its contour or mass, made immediately identifiable as contraband. See *Boatright v. State*, 225 Ga. App. 181 (1) (483 SE2d 659) (1997) (reversing trial court's denial of motion to suppress because officer's testimony that he could not identify the object in defendant's pocket beyond "plastic" and that he manipulated the object to determine exactly what it was, proved that the object's contour did not make its identity immediately apparent to the officer, rendering further exploration of defendant's pocket unlawful); *State v. Williams*, 220 Ga. App. 100, 101-102 (1) (469 SE2d 261) (1996) (affirming trial court's suppression of evidence because object's contour did not make itself readily apparent to officer who testified that he "really couldn't tell" what kind of contraband was in defendant's pocket, but rather, "all [he] could tell was basically that it was something in a bag") (punctuation omitted). But see *Bianco v. State*, 257 Ga. App. 289, 291 (570 SE2d 605) (2002) (affirming trial court's denial of motion to suppress where 16-year veteran police officer testified that package in defendant's pocket felt like a "corner baggy" which was commonly used for street sales of controlled substances); *Andrews v. State*, 221 Ga. App. 492 (471 SE2d 567) (1996) (affirming denial of motion to suppress where officer with seven years of experience in narcotics

---

[4] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U. S. Const., Amend. IV. The purpose of the Fourth Amendment is "to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals." *United States v. Martinez-Fuerte*, 428 U. S. 543, 554 (96 SC 3074, 49 LE2d 1116) (1976).

who conducted pat-down of defendant testified that through defendant's shorts, he felt what was immediately apparent to him as a large cookie of crack cocaine); *Howard v. State*, 220 Ga. App. 579, 582 (1) (469 SE2d 746) (1996) (affirming denial of motion to suppress because videotape of pat-down indicated that the suspicious — and possibly dangerous — nature of the bulge in defendant's pants was immediately apparent to the officer); *Seaman v. State*, 214 Ga. App. 878-879 (449 SE2d 526) (1994) (affirming denial of motion to suppress because officer believed object in defendant's pocket was plastic bag containing contraband upon initially feeling it, and officer visually observed a portion of the bag protruding from defendant's pocket).

In *Seaman*, the defendant ran into a house when he saw officers approach to execute a search warrant. The officers entered the house to look for the defendant and found him in another room. Officer Rose conducted a pat-down of the defendant looking for weapons. During the pat-down Officer Rose detected a plastic baggie in the pocket of the defendant's shorts and observed several inches of clear plastic baggie exposed. Officer Rose testified that he knew it was a plastic baggie when he felt it and that he believed it contained contraband. Officer Rose removed the baggie, which contained a green, leafy material later proved to be marijuana. The defendant was charged with possession. The trial court denied the defendant's motion to suppress and this Court affirmed finding that,

> [Officer] Rose, who had more than nine years' experience as a police officer and over four years' experience working as a narcotics officer, believed the object in [defendant's] pocket was a clear plastic baggie containing contraband upon initially feeling it in [defendant's] pocket, and he then visually observed a portion of the baggie protruding from the pocket. No evidence was presented indicating that [Officer] Rose manipulated the object . . . in any way before identifying it. We agree with the trial court that under these circumstances, the "plain feel" principle approved in *Dickerson* applies.

Id. at 879-880 (2).

We recognize that this case is similar to *Seaman*. Here, Officer Horiuchi testified that he had two and a half years experience in dealing with controlled substances and had no doubt that what he felt in Henderson's pocket was in fact contraband. However, Officer Horiuchi did not testify that he felt anything unique about the package in Henderson's pocket which would indicate that narcotics were contained within the package. Officer Horiuchi's testimony merely

established that he felt a plastic bag and had no doubt it contained contraband because contraband is frequently packaged in plastic bags and the coin pocket is a well-known place for individuals to hide drugs. Unlike the officer in *Seaman*, Officer Horiuchi never observed any portion of the plastic bag protruding from Henderson's pocket.

Another important difference between *Seaman* and the case at bar is that, in *Seaman*, the trial court denied the motion to suppress and here the trial court granted the motion. In these cases, which are very "fact specific," the decision of the trial judge, sitting as the trier of fact, should be accorded considerable deference when his or her decision falls within the broad outlines of the guidance provided by the United States Supreme Court in *Dickerson*, supra at 375.

Under the controlling precedent, in order to justify a seizure based on the plain feel doctrine, at a minimum, the officer must testify that, based on his experience, the item's contour or mass makes its identity as contraband immediately apparent. See *Dickerson*, supra at 375. This minimum requirement ensures that law enforcement officers do not arbitrarily and oppressively interfere with the privacy and personal security of individuals as guaranteed by the Fourth Amendment. See *United States v. Martinez-Fuerte*, 428 U. S. 543, 554 (96 SC 3074, 49 LE2d 1116) (1976). Expanding the plain feel doctrine to a case such as this one reduces the protections afforded by the Fourth Amendment.

Here, even though Officer Horiuchi did not slide, squeeze, or otherwise manipulate the contents of Henderson's pocket, Officer Horiuchi's testimony did not establish that the item's contour or mass made its identity as contraband immediately apparent. Consequently, the trial court did not err in granting the motion to suppress.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 4, 2003.

*J. Gray Conger, District Attorney, Robert B. Bickerstaff II, Alonza Whitaker, William D. Kelly, Jr., Assistant District Attorneys,* for appellant.
*Michael E. Garner,* for appellee.